702 P.2d 818

**BOISE CAR AND TRUCK RENTAL COMPANY, an Idaho corporation,
Plaintiff-Appellant,**

v.

**WACO, INC., an Idaho corporation,
and Arthur Donald Watkins,
Defendants-Cross Defendants-Respondents,**

and

**Contractors Equipment Supply
Company, Defendant-Cross
Claimant-Respondent.**

No. 15458.

Supreme Court of Idaho.

June 18, 1985.

James E. Risch of Risch, Goss, Insinger & Salladay, Boise, for plaintiff-appellant.

James W. Kiser, Boise, for respondent Contractors Equipment Supply Co.

R. B. Rock and Mark S. Prusynski of Moffatt, Thomas, Barrett & Blanton, Boise, for respondents Waco, Inc. and Arthur Donald Watkins.

SHEPARD, Justice.

This is an appeal from a summary judgment in favor of two defendants and from partial summary judgment in favor of a third defendant. Plaintiff filed this action to recover for damages to personal property sustained during a windstorm, which blew the roof off of a structure belonging to defendants and onto plaintiff's adjacent property. We affirm.

On June 30, 1981, a windstorm blew the roof off of an airplane hangar at Boise Airport, causing damage to plaintiff Boise Car and Truck Rental Company. Farm Development Corporation was then the owner of the hangar, which was located on property leased from the City of Boise. Boise Car filed an initial complaint against both Farm Development and a previous owner of the hangar, WACO, Inc. Upon motion, summary judgment was granted for Farm Development and against Boise Car. That judgment was final, and no appeal has been taken therefrom by Boise Car. Therefore, Farm Development is not a party to this appeal.

Thereafter, plaintiff Boise Car filed an amended complaint against all of the prior owners of the building, including WACO, Inc., Arthur Donald Watkins, and Contractors Equipment Co. Those parties, in turn, joined as third party defendants Smith and Kangas Engineers, Inc., and Ralph Kangas, in his individual capacity. The trial court granted summary judgment in favor

of Contractors Equipment Supply and Watkins. At the same time, the trial court granted summary judgment to Smith and Kangas Engineers, Inc., and to Ralph Kangas personally. The trial court granted partial summary judgment to WACO, Inc., and denied Boise Car's motion for summary judgment. The trial court certified as final and appealable those summary judgments in favor of Contractors Equipment, Watkins, Smith and Kangas Engineers, Inc., and of Kangas as an individual. Boise Car attempts by this appeal to overturn the summary judgments in favor of Contractors Equipment and Watkins, the partial summary judgment in favor of WACO, Inc., and the denial of Boise Car's own motion for summary judgment. As we view the situation, the sole parties to this appeal are Contractors Equipment and Watkins, and the sole issue presented is the validity of the summary judgments issued in their favor.

The history of the hangar in question appears largely uncontroverted. In 1963, Contractors Equipment leased real property at the Boise Airport from Boise City for the purpose of operating Sparks Flying Service. In 1965, Contractors Equipment contracted with an independent contractor, George Singley, who is not a party to this action, to construct an aircraft hangar 45 feet deep and 200 feet wide. The plans and specifications for the structure were drawn by an engineer named Ebling, of Portland, Oregon. Ebling is also not a party here. The roof trusses and roof connections was designed by Truss Fab, Inc., of Clackamas, Oregon, who again is not a party.

On April 6, 1967, Contractors Equipment assigned the Boise City lease and transferred possession of the hangar building to one Arthur Donald Watkins. On December 31, 1968, Watkins assigned the lease and transferred the building to WACO, Inc. In June 1969, while WACO, Inc. was occupying the hangar, a fuel truck struck a vertical column of the building, causing a large portion of it to collapse. In the spring of 1970, WACO, Inc. decided that only approximately one-third of the original building should be reconstructed. The "new" building would be only 80 feet wide, as contrasted with its original width of 200 feet. WACO, Inc. contracted with Smith and Monroe Engineers, Inc., which has not been joined herein, to prepare the reconstruction plans. Ralph Kangas, then an employee of Smith and Monroe, prepared those plans. The Kangas plans were used by Idaho Steel Builders, not a party here, to perform the necessary reconstruction, which was then completed in early 1970. In 1974, WACO, Inc. assigned its lease and conveyed the building to Farm Development Corporation, who was in possession and control of it when the roof blew off in 1981.

Following the June 30, 1981 incident, Ralph Kangas, then of Smith and Kangas Engineers, and Russell Westbrook of Conveyor Engineering, Inc., inspected the building and concluded that defective connections at the north and south ends of the roof beams had caused the loss of the roof in the windstorm. Deposition evidence established, at least at the point of summary judgment, that one of the two causal defects was a construction defect and the second was a design defect, and that the allegedly defective connections were installed during the original 1966 construction. Deposition testimony also indicated, without contradiction, that the nature of these defects was such that they would not have been discovered by a lay person. It is further uncontroverted that Contractors Equipment had no knowledge of the allegedly defective roof connectors.

In its amended complaint against Contractors Equipment, Watkins and WACO, Inc., Boise Car alleged that the defendants created, or negligently permitted to remain on the land, a structure which involved an unreasonable risk of harm to others outside the land; that defendants breached a lease agreement, of which Boise Car was a third party beneficiary; and that those defendants failed to warn Boise Car of defects in the building.

The trial court entered summary judgment in favor of Contractors Equipment

and Watkins on all counts of Boise Car's complaint. As to WACO, Inc., the trial court granted partial summary judgment on counts two and three of the complaint, which counts alleged that WACO, Inc., breached a lease agreement, of which Boise Car was a third party beneficiary, and that WACO had failed to warn Boise Car of defects in the hangar. The trial court denied summary judgment in favor of WACO, Inc., as to count one, thereby holding that material issues of fact existed as to WACO, Inc.'s negligently permitting the hangar to remain upon the land in an unreasonably dangerous condition.

 Two issues on this appeal merit only summary treatment. First, as to the partial summary judgment in favor of WACO, Inc., such was not certified as final under I.R.C.P. 54(b). Since there remain material issues of fact for resolution of this issue at trial, the partial summary judgment is not now properly before this Court. Second, Boise Car's motion for summary judgment in its own favor having been denied, that order likewise is not appealable. *State of Idaho, Department of Law Enforcement v. One 1955 Willys Jeep*, 100 Idaho 150, 595 P.2d 299 (1979).

 The trial court, in its well-reasoned memorandum decision and order, noted, "Summary judgment is appropriate only when there is no genuine issue of material fact after the pleadings, depositions, admissions and affidavits have been construed most favorably to the opposing party and the moving party is entitled to judgment as a matter of law," citing *Moss v. Mid-American Fire and Marine Ins.*, 103 Idaho 298, 647 P.2d 754 (1982); *Kline v. Clinton*, 103 Idaho 116, 645 P.2d 350 (1982). We agree.

In granting summary judgment to Contractors Equipment and Watkins, the trial court held that the cause was governed by § 373 of the Restatement (Second) of Torts (1965), entitled "Dangerous Conditions Created Before Vendor Transfers Possession." We are cited to no authority wherein Idaho, or for that matter any other jurisdiction in the country, has specifically adopted said section of the Restatement (Second) of Torts. We need not, however, decide in this proceeding whether this Restatement section should be adopted, since even assuming *arguendo* that the Restatement is applicable to the facts set forth here, plaintiff Boise Car cannot prevail.

 The general rule is that the vendor of real property who parts with title, possession, and control of it is permitted to shift all responsibility for the condition of the land to the purchaser. *Prosser and Keeton on Torts*, 446–47 (5th ed. 1984). Although the question has never been addressed in Idaho, Prosser and Keeton suggest that an exception to this general rule should exist where a vendor transfers property that is in a condition which involves an unreasonable risk of harm to those outside the premises, and "in such a case the vendor remains subject, *at least for a reasonable time*, to any liability he would have incurred if he had remained in possession for injuries to persons or property outside of the land ..." Clearly, there must be a time limit upon the duration of potential liability under this suggested exception to the usual rule of nonliability for the vendor. For instance, if the vendor has created the condition or has actively concealed it from the vendee, the vendor has been held to have continuing liability, until the vendee discovers it and has had reasonable opportunity to take effective precaution against it. Otherwise, *i.e.*, absent fraudulent concealment, the vendor's liability continues only until the vendee has had reasonable opportunity to discover the condition and to take precautions. *Cavanaugh v. Pappas*, 91 N.J.Super. 597, 222 A.2d 34 (1966).

Section 373 of the Restatement (Second) of Torts (1965), defines the scope of the seller's legal responsibility more broadly than do Prosser and Keeton, but notably does not provide a clear time limitation as to the seller's liability. This section states:

"1. *Section 373 of the Restatement:*

"373. Dangerous Conditions Created Before Vendor Transfers Possession.

"(1) A vendor of land who has *created or negligently permitted to remain* on the land a structure or other artificial condition which involves an unreasonable risk of harm to others outside of the land, because of its plan, construction, location, disrepair, or otherwise, is subject to liability to such persons for physical harm caused by the condition *after his vendee has taken possession of the land.*

"(2) If the vendor has *created the condition, or has actively concealed it* from the vendee, the liability stated in Subsection (1) continues *until the vendee discovers it and has reasonable opportunity to take effective precautions* against it. Otherwise the liability continues only *until the vendee has had reasonable opportunity to discover the condition and to take such precautions.*" (Emphasis added.)

■ The standard of liability utilized by the trial court, as set forth in Restatement (Second) of Torts, is a more far-reaching liability upon vendors of real property than this Court has formerly been willing to adopt. It is not necessary here to decide whether the Restatement view should be adopted, since even assuming that the Restatement standard is applicable, no liability has been shown on the part of defendant Contractors Equipment or defendant Watkins. As to Contractors Equipment's liability under the theory that Contractors Equipment "created" the structure, the trial court held, and we agree, that the uncontroverted evidence disclosed that Contractors Equipment did not "create" the structure; rather, the hangar was created by the non-party construction contractor and engineer who actually designed and built it in 1966. The trial court also held that the uncontroverted evidence disclosed that Contractors Equipment "neither knew nor reasonably could have known about the defective roof beam connectors." We agree. It follows that plaintiff's assertion that Contractors Equipment "negligently permitted to remain on the land a structure or other artificial condition which involves an unreasonable risk of harm to others outside the land" has not been proved. The trial court was correct in issuing summary judgment against plaintiff on that theory of liability. What an owner does not know and does not have the reasonable means of knowing cannot be the basis for negligently permitting a dangerous condition to remain on the land. Nor can the owner be said, on the basis of facts unknown to him, to have actively concealed such condition from the vendee.

■ As to Watkins, the trial court held, and we agree, that there is absolutely no evidence that Watkins "created" the structure. Likewise, the trial court held, and we agree, that the alleged dangerous condition was unknown to Watkins, and that he could not reasonably have known of the alleged defective condition. Watkins did not negligently permit the structure to remain on the land in an unreasonably dangerous condition, and he could not be held to have actively concealed it from his vendee. In short, although the trial court utilized a standard of vendor liability which we are unwilling to adopt on these facts or at this time, under that standard of liability, the trial court was correct in giving summary judgment to both Contractors Equipment and Watkins. Therefore, we affirm.

■ As to the second count of the complaint, relating to Boise Car's status as third party beneficiary to the lease between Contractors Equipment Supply Co. and/or Watkins and the City of Boise, we find no error in the trial court's grant of summary judgment against plaintiff. Boise Car argues that the lessees were required under this contract to keep the property in good condition for the protection not only of the lessor City of Boise, but also of plaintiff Boise Car as a lessee from the City of Boise of adjoining property. Even assuming that Contractors Equipment and/or Watkins breached its lease with Boise City, and that such breach caused the damage to plaintiff Boise Car, we hold that Boise Car was not a third party beneficiary to the contract. There is no showing that the

parties to the lease contract intended that such lease be made for Boise Car's direct or primary benefit. Therefore, Boise Car is not entitled to third party beneficiary status. *Dawson v. Eldredge*, 84 Idaho 331, 372 P.2d 414 (1962); *cf., Wing v. Martin* 107 Idaho 267, 688 P.2d 1172 (1984). The decision of the trial court granting summary judgment for Contractors Equipment and Watkins on count two of Boise Car's amended complaint is affirmed.

 We turn finally to the assertion of error in the trial court's handling of count three, regarding defendants' failure to warn plaintiff of the dangerous condition. As discussed in connection with count one, the undisputed facts indicate that Contractors Equipment and Watkins did not know and could not reasonably have known of the alleged defective roof beam connections. Neither Contractors Equipment nor Watkins can be held liable for failing to warn Boise Car of an alleged unreasonably dangerous condition of which they were unaware. Consequently, we affirm the district court's granting of summary judgment to Contractors Equipment and to Watkins on count three.

Much has been said in the briefing and oral argument of this cause relating to the substantial time which has elapsed since Contractors Equipment or Watkins occupied or controlled the structure. Defendants assert that our adoption of the Restatement (Second) of Torts standard of vendor liability for dangerous conditions constituting hazards to those outside the property would create an on-going liability which would extend literally forever and against which it would be impossible to insure. Defendants further suggest that such on-going liability is patently unfair and is an inequitable imposition upon a property owner who hires engineers and contractors to design and construct a structure. Defendants perceive this Restatement rule as unfair, because it allows the liability of the designers and builders to terminate in accordance with our statutes of limitation (*see* I.C. § 5–241), whereas the liability of the owner-vendor will continue, with no possibility of recovery against those parties whose actual negligence arguably caused the damage. Although these considerations may ultimately be addressed by this Court, we deem their resolution unnecessary in the instant case.

The trial court decision and orders are affirmed in their entirety. Costs to respondents. No attorney's fees on appeal.

DONALDSON, C.J., BISTLINE and HUNTLEY, JJ., and McFADDEN, J. Pro Tem., concur.