828 P.2d 334

**Gary Dean GARZEE, Plaintiff–Appellant,**

v.

**C/O Lon BARKLEY, Defendant–Respondent.**

No. 19183.

Court of Appeals of Idaho.

March 5, 1992.

Gary Dean Garzee, Boise, appearing pro se.

Larry EchoHawk, Atty. Gen. and Robert R. Gates, Deputy Atty. Gen., Boise, for defendant-respondent.

WALTERS, Chief Justice.

This action arose from a prison "scuffle" between an inmate and a correctional officer. The issue presented on appeal is whether the district court properly dismissed the inmate's civil rights claim on summary judgment. For the reasons stated below, we affirm.

### Facts

Gary Dean Garzee is an inmate at the Idaho State Correctional Institution, in Ada County, Idaho. Although Garzee was housed in unit eight—the highest security unit in the institution—he recently had been assigned a less restrictive custody status within that unit. On the date of the incident giving rise to this action, Garzee was being returned to the institution from a court appearance. A district court marshal escorted Garzee into the foyer of the administrative building, removed Garzee's restraints and left him with Correctional Officer Lon Barkley. Pursuant to established procedure, Garzee placed his personal items on a table and sat down. Searching through these items, Officer Barkley found a home-made address book containing metal staples, and an ink pen. Barkley told Garzee these objects were not allowed in the unit, and that he was going to confiscate them. Garzee verbally challenged the order, arguing that his unit status permitted him to keep the items. As the verbal confrontation escalated, Garzee stood up and took the book from the table.

According to Garzee's complaint and affidavit, which are sharply disputed by Officer Barkley, Barkley struck Garzee in the eye with a half-closed fist and snatched the address book from Garzee's hand. Barkley then "bear-hugged" Garzee, kicked Garzee's feet from under him and pulled him hard to the floor. While on top of Garzee, Barkley grabbed Garzee's scrotum. Garzee struggled free and began to run, and Barkley again tackled him. Garzee claims he never struck at Officer Barkley, but that he feared for his safety and therefore attempted to flee. The scuffle continued some minutes until a second officer arrived. Unable to subdue Garzee by verbal command, the officer drew his pistol and pointed it at Garzee. After placing Garzee in handcuffs and leg restraints, the officers took Garzee to an in-house medic. A medical examination by a physician the following day showed that Garzee had sustained no broken bones or other serious injuries.

Alleging that the unnecessary and unjustified use of force by Barkley constituted cruel and unusual punishment in violation of the Eighth and Fourteenth Amendments, Garzee brought this action under 42 U.S.C. § 1983, naming Barkley as the defendant. His complaint sought declaratory and injunctive relief, as well as $20,000 in compensatory and punitive damages. The district court granted summary judgment for Barkley. Garzee appeals.

### Standard of Review

On appeal from an order granting summary judgment, we will review the pleadings, depositions, and admissions on file, together with the affidavits, if any, to determine whether there is a genuine issue

as to any material fact and whether the moving party is entitled to judgment as a matter of law. *Ray v. Nampa School Dist. No. 131*, 120 Idaho 117, 814 P.2d 17 (1991); I.R.C.P. 56(c). Standards applicable to summary judgment require the district court, and the appellate court on review, to liberally construe facts in the existing record, and draw all reasonable inferences therefrom, in favor of the party opposing the motion. *Ray*, 120 Idaho at 122, 814 P.2d at 19. We note, however, that the existence of disputed facts will not defeat summary judgment when the plaintiff fails to make a showing sufficient to establish the existence of an element essential to his case, and on which he will bear the burden of proof at trial. *See Jerome Thriftway Drug, Inc. v. Winslow*, 110 Idaho 615, 717 P.2d 1033 (1986); *see also Celotex Corp. v. Catrett*, 477 U.S. 317, 322, 106 S.Ct. 2548, 2552, 91 L.Ed.2d 265 (1986); *Bennett v. Parker*, 898 F.2d 1530, 1532 (11th Cir.1990), *cert. denied,* — U.S. —, 111 S.Ct. 1003, 112 L.Ed.2d 1085 (1991). Facts in dispute cease to be "material" facts when the plaintiff fails to establish a prima facie case. In such a situation, there can be "no genuine issue of material fact," since a complete failure of proof concerning an essential element of the *nonmoving party's* case necessarily renders all other facts immaterial. *Celotex*, 477 U.S. at 322–33, 106 S.Ct. at 2552–58. This rule facilitates the dismissal of factually unsupported claims prior to trial.

### Cruel and Unusual Punishment Prohibition

The Eighth Amendment, which applies to the states through the Due Process Clause of the Fourteenth Amendment, prohibits the infliction of "cruel and unusual punishments" of those convicted of crimes. However, not every governmental action affecting the interests or well-being of a prisoner is subject to Eighth Amendment scrutiny. After incarceration, only the unnecessary and wanton infliction of pain constitutes cruel and unusual punishment forbidden by the Eighth Amendment. *Whitley v. Albers*, 475 U.S. 312, 319, 106 S.Ct. 1078, 1084, 89 L.Ed.2d 251 (1986). Whenever a prison official stands accused of using excessive physical force in violation of the Cruel and Unusual Punishments Clause, be it in the context of a prison riot or some lesser disturbance, the core judicial inquiry is that set out in *Whitley:* whether force was applied in a good-faith effort to maintain or restore discipline or maliciously and sadistically for the very purpose of causing harm. *Hudson v. McMillian,* — U.S. —, —, 112 S.Ct. 995, —, 117 L.Ed.2d 156 (1992), (quoting *Whitley*, 475 U.S. at 320–21, 106 S.Ct. at 1084–85). In applying this standard, it is appropriate to evaluate the need for the application of force, the relationship between the need and the amount of force used, the threat reasonably perceived by the responsible officials, and any efforts made to temper the severity of a forceful response. *Hudson,* — U.S. at —, 112 S.Ct. at —. From such considerations, inferences may be drawn as to whether the use of force could plausibly have been thought necessary, or instead evinced the wanton and unjustified infliction of harm. *Id.*

Garzee contends that the force used against him was unnecessary under the circumstances, and that Barkley's actions constituted wanton infliction of pain proscribed by the Eighth Amendment. However, in analyzing Garzee's claim under the relevant factors set forth in *Whitley* and reaffirmed in *Hudson*, we conclude that Garzee has not established a constitutional violation. The undisputed evidence shows that Garzee seized the objects from the table in defiance of the officer's instructions. Regardless whether the prison rules in fact permitted Garzee to possess the items, he in no way was entitled to avail himself of the "self-help" remedy he had attempted. We agree with Judge McKee's observation that "[e]ven if it should later prove out that the inmate was entitled to have the item in his cell, the inmate was obligated to obey the order at the time, and sort out his rights later through administrative grievance procedures at the prison." A prison official may use force necessary to restore order and

need not wait until disturbances reach dangerous proportions before responding. *Bennett*, 898 F.2d at 1533. Decisions made at the scene of a disturbance to restore order are entitled to a degree of deference. *Hudson, supra; Johnson v. Glick*, 481 F.2d 1028, 1033 (2nd Cir.), *cert. denied sub nom. John v. Johnson*, 414 U.S. 1033, 94 S.Ct. 462, 38 L.Ed.2d 324 (1973). Under the circumstances presented in this case, we conclude that some degree of physical force was necessary to enforce discipline and to restore order during the confrontation between Garzee and Officer Barkley.

In evaluating the relationship between the need for force and the severity of force used, the prison's security interest in maintaining discipline and order is weighed against the force used on the complaining inmate. *See Bennett*, 898 F.2d at 1533 (applying *Whitley* analysis). Here, it is undisputed that Garzee wore no physical restraints and that Officer Barkley was alone with him when the confrontation erupted. Garzee alleges that Barkley struck him once in the eye and then tackled him. It appears that additional force was applied only after Garzee had escaped from Barkley and began to run. Barkley's attempt to capture and restrain Garzee at this point clearly was justified. Moreover, these facts demonstrate that the physical force used by Barkley actually fell short of that needed to restrain Garzee: not until the second officer's arrival and show of deadly force did Garzee give up his resistance. Garzee makes no allegation of excessive force occurring once he had been restrained. *Compare Hudson, supra*, (guards' beating of inmate, who was handcuffed and shackled at the time, qualified as clearly excessive and occasioned unnecessary and wanton infliction of pain).

Further, the record in this case shows that Garzee sustained only minor injuries, consisting of a cut on his shin and a bruised cheek. Although the absence of serious injury is not dispositive of an Eighth Amendment claim, it is relevant. *Hudson, supra*. Here, Garzee's injuries simply do not comport with his allegation that force was applied "maliciously and

sadistically for the very purpose of causing harm." Rather, the injuries he suffered are consistent with an amount of force necessary to control an unrestrained inmate attempting to flee.

### Conclusion

Even accepting Garzee's factual assertions as true, we agree with the court below that Garzee failed to establish facts sufficient to establish a violation of his Eighth Amendment rights, an essential element of his 1983 civil rights action. The district court's order dismissing Garzee's complaint on summary judgment therefore is affirmed.

SWANSTROM, J., and WESTON, J. Pro Tem., concur.